**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **FADWA SAFAR**, *et al.*, | ) | |
| **Plaintiffs**, | ) | |
| | ) | **Case No. 1:15-cv-467** |
| **v.** | ) | |
| | ) | |
| **LISA TINGLE**, *et al.*, | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **FADWA SAFAR**, *et al.*, | ) | |
| **Plaintiffs**, | ) | |
| | ) | **Case No. 1:15-cv-469** |
| **v.** | ) | |
| | ) | |
| **COSTCO WHOLESALE** | ) | |
| **CORPORATION,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

These two cases, consolidated for discovery and pre-trial purposes, arise from a set of facts that can be described only as sad and regrettable. Plaintiffs, a husband and wife, were arrested, and the wife was incarcerated briefly, not only for a crime they did not commit, but in fact for a crime that never occurred. Based on these events, plaintiffs here sue (i) the company that erroneously reported that they committed a crime, (ii) the police officer who investigated the matter and filed an affidavit that led to the issuance of arrest warrants for plaintiffs, and (iii) the prosecutor, who, at the time the husband's case was dismissed, became aware that no crime had been committed, but then failed to take steps to withdraw the warrant for the wife's arrest, which led six months later to the wife's incarceration over Christmas.

1

Defendants seek threshold dismissal of the amended complaints on various grounds. As these dismissal grounds have been fully briefed and argued orally, defendants' dismissal motions are ripe for disposition.

## I.

The pertinent facts may be succinctly summarized.[1]

Plaintiffs Fadwa Safar and Jan Eshow are married residents of Alexandria, Virginia. They fled here from Iraq to avoid persecution for their Christian beliefs and they are now American citizens.

Defendant Lisa Tingle is an Assistant Commonwealth's attorney for Arlington County, Virginia ("Prosecutor Tingle"). Defendant Stephanie Rodriguez is an officer with the Arlington County Police Department ("Officer Rodriguez"). Defendant Costco Wholesale Corporation ("Costco") is a corporation incorporated in the state of Washington with its principal place of business located in Issaquah, Washington.

In September 2012, Mr. Eshow purchased over $1,000 of flooring from the Pentagon City, Virginia Costco store for a home flooring project. Shortly thereafter, while in another Costco store, Mr. Eshow saw that the same flooring he had recently purchased in the Pentagon City store was on sale in this Costco store for a lower price. Aware of Costco's policy of permitting purchasers to take advantage of sale prices on recently purchased products, Mr. Eshow inquired of Costco's store personnel how he might take advantage of this policy with respect to the flooring he had purchased at the Pentagon City Costco. Mr. Eshow was told he could take advantage of the sale price at the store of purchase. Thus, on October 17, 2012, Mr.

---

[1] The facts stated here are derived from the amended complaints and "documents incorporated into the [amended] complaint[s] by reference," as is appropriate on a threshold Rule 12, Fed. R. Civ. P., motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Eshow returned to the Pentagon City Costco store to take advantage of the sale price on the flooring he had purchased there earlier. Store personnel at the Pentagon City Costco store explained to Mr. Eshow how he could take advantage of the new sale price. Specifically, Mr. Eshow was directed to purchase the identical flooring at the sale price then in effect at the store and then to return the flooring immediately after the purchase, using his initial sales receipt as the basis for the refund. Mr. Eshow complied with these instructions. Both Mr. Eshow's original flooring purchase in September and his refund for the same flooring in October were posted to Mr. Eshow and Ms. Safar's joint Costco membership and credit card account.

On October 17, 2012, the date of the return transaction, Costco called the Arlington County Police Department to report—erroneously—that Mr. Eshow and Ms. Safar had committed fraud in the Pentagon City Costco store. Costco made this report despite having sales information, credit card documentation, videotapes showing the second flooring purchase, and statements from store personnel who attended to the transactions at issue. Officer Rodriguez, along with another officer, responded to Costco's call that same day—October 17, 2012. Officer Rodriguez and her colleague listened to Costco's claim of alleged fraud,[2] and viewed a video showing Mr. Eshow's activities in the Pentagon City store on October 17, 2012. Importantly, the two officers did not view or take into account the portion of the video depicting the purchase of the flooring in question. Moreover, the two officers did not investigate the availability of sales and credit card information concerning the transactions in issue, nor did they question the sales and customer help-desk personnel who assisted Mr. Eshow with the transactions in question.

---

[2] The Costco employees who alleged fraud were not the same employees who had previously directed Mr. Eshow to take advantage of the sale price at the Pentagon City store, nor were they the same employees involved in the return transaction at the Pentagon City store.

Later in the day on October 17, 2012, Officer Rodriguez filed an affidavit in support of a request for felony warrants for the arrest of Mr. Eshow and Ms. Safar for wrongfully obtaining a refund on goods they had allegedly never purchased. Based on Officer Rodriguez's affidavit, a magistrate issued arrest warrants for both plaintiffs.

Costco contends that shortly after the October 17, 2012 incident, Costco representatives contacted Officer Rodriguez and informed her that the allegations against Mr. Eshow and Ms. Safar were mistaken and that no fraud had in fact occurred. Plaintiffs do not concede that Costco representatives made any such representation, and Officer Rodriguez denies having received this information from Costco representatives in October 2012. In any event, Officer Rodriguez failed to take any steps to correct or withdraw her affidavit or to secure the withdrawal of the arrest warrants for Mr. Eshow and Ms. Safar.

Eight months later, in June 2013, Mr. Eshow was stopped for speeding in Fairfax County, Virginia. Based on the still active October 17, 2012 arrest warrant, Mr. Eshow was arrested and handcuffed in front of his family. Mr. Eshow retained counsel and on July 31, 2013, the case came before the Arlington General District Court. On that day, a Costco representative appeared and told Officer Rodriguez and Prosecutor Tingle, the prosecutor on Mr. Eshow's case, that no fraud had occurred and that the charge against Mr. Eshow was a mistake and should be withdrawn. Prosecutor Tingle communicated this information to the judge, who promptly dismissed the case against Mr. Eshow by an Order *nolle prosequi*.

Costco contends that the Costco representative who advised Officer Rodriguez and Prosecutor Tingle that the allegations against Mr. Eshow were a mistake did the same with respect to the allegations against Ms. Safar. Again, plaintiffs do not concede that this occurred. It also appears that when Officer Rodriguez came to court in connection with Mr. Eshow's case,

she brought her investigative file, which included investigative notes confirming that the arrest warrants for Mr. Eshow and Ms. Safar were premised on the same alleged fraud. This same information was included in Prosecutor Tingle's case file. Shortly after the case against Mr. Eshow was dismissed, Prosecutor Tingle and Officer Rodriguez composed a report stating, among other things, that warrants had been issued for the arrest of both Mr. Eshow and Ms. Safar.

Standard procedures exist for the withdrawal of warrants from state-wide law enforcement databases, and both Officer Rodriguez and Prosecutor Tingle had been trained in these procedures. Specifically, the relevant procedures state that "[a]n attorney for the Commonwealth may move the court in which the warrant summons would be returnable for the dismissal and/or destruction of any executed warrant or summons issued by a magistrate." Office of the Exec. Sec'y of the Va. S. Ct., Dep't of Judicial Servs., *Gen'l Dist. Ct. Manual, Crim. Procedures*, (Rev. 7/15), at 3-2 (available online at *<http://www.courts.state.va.us/courts/ gd/resources/manuals/gdman/chapter03.pdf>*). Plaintiffs allege that despite the existence of these standard procedures, Officer Rodriguez and Prosecutor Tingle maliciously and recklessly failed to take any steps to secure the withdrawal of the pending warrant for Ms. Safar's arrest.

In late 2013, Mr. Eshow and Ms. Safar applied to become American citizens. After passing her citizenship test, Ms. Safar was notified in December 2013 by United States immigration authorities that she was required to obtain a clearance letter from the police in any location where she had previously resided. To comply with this requirement, Ms. Safar, on December 23, 2013, went to police headquarters in Prince George's County, Maryland, where she had previously resided, to obtain a clearance letter. The official who took Ms. Safar's request for the clearance letter asked Ms. Safar to wait while the official retrieved the necessary

paperwork. A uniformed officer then informed Ms. Safar that she was being arrested pursuant to an Arlington County arrest warrant dated October 17, 2012. As a result, Ms. Safar was incarcerated in Maryland, and the Prince George's County magistrate informed Ms. Safar that her transfer to Arlington, Virginia could be arranged only after a Prince George's County judge appeared. None of the defendants took any action to prevent Ms. Safar's arrest or to secure her release from jail.

As part of the incarceration process in Prince George's County, Ms. Safar had to disrobe for a full body search and squat while nude to ensure she was not smuggling contraband into the jail facility. Given her culture's emphasis on modesty and personal privacy, this was especially humiliating for Ms. Safar. She remained in jail until December 26, 2013, when she was brought to Arlington, Virginia. After she was transported to Arlington, Ms. Safar was served with the warrant alleging that she had defrauded Costco. She was then released. On December 27, 2013, the case against Ms. Safar was dismissed by *nolle prosequi*.[3]

During her period of incarceration, Ms. Safar was the mother and primary care-giver of three young children, then ages four years, two years, and six months, the latter of whom Ms. Safar was breast feeding. Ms. Safar suffered severe mental anguish from being separated from her children over Christmas, and suffered physical pain from the jail's denial of her request to use a breast pump.

Both Ms. Safar and Mr. Eshow allege that their arrests caused severe emotional distress to them and their children, who perceived that their parents had abandoned them. Additionally, Ms. Safar alleges (i) that she was depressed both during and after her incarceration, (ii) that she

---

[3] It is worth noting that Prosecutor Tingle was not assigned to Ms. Safar's case.

continues to suffer from headaches, sleeplessness, and nausea, and (iii) that the experience rendered her unable to nurse her infant son for more than a year.

Defendants have filed motions to dismiss the amended complaints in both cases on various grounds.

## II.

Plaintiffs assert two claims against Costco with respect to Mr. Eshow and Ms. Safar: a malicious prosecution claim, and a negligence claim.[4] Costco has moved to dismiss both claims for failure to state a claim, and each claim is addressed separately below.

## A.

In Virginia, to establish a malicious prosecution claim, a plaintiff must allege that "the prosecution was (1) malicious, (2) instituted by or with the cooperation of [the defendant], (3) without probable cause, and (4) terminated in a manner not unfavorable to [the plaintiff]." *O'Connor v. Tice*, 281 Va. 1, 7 (2011). The Supreme Court of Virginia has noted that because "[a]ctions for malicious prosecution arising from criminal proceedings are not favored in Virginia ... , [t]he requirements for maintaining such actions are more stringent than those applied to other tort cases" in order "to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions." *Reilly v. Shepherd*, 273 Va. 728, 733 (2007).

Here, Costco contends that plaintiffs have failed to allege facts that plausibly support the first three elements of a malicious prosecution claim, and therefore that plaintiffs' malicious prosecution claim against Costco must be dismissed. Plaintiffs, for their part, contend that the amended complaint against Costco alleges sufficient facts to survive a motion to dismiss.

---

[4] The parties agree that Virginia law applies here, as the alleged torts occurred in Virginia. *See Jones v. R.S. Jones & Assocs.*, 246 Va. 3, 5 (1993) (holding that the law of the place of the tort governs a tort action).

It is appropriate to analyze the first and third elements of a malicious prosecution claim together, as these two elements depend on the same or similar factual allegations. The Supreme Court of Virginia has defined malice—the first element—as "any *controlling* motive other than a good faith desire to further the ends of justice, enforce disobedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333 (1998) (citing *Freezer v. Miller*, 163 Va. 180 (1934)) (emphasis in original).[5] Importantly, as the Supreme Court of Virginia has made clear, "[t]he existence of malice is generally a question to be resolved by the fact finder from all the circumstances of the case." *Hudson*, 255 Va. at 333 (citations omitted). In this regard, in certain circumstances, "[m]alice may be inferred from lack of probable cause," which is the third element of a malicious prosecution claim. *Reilly*, 273 Va. at 733. Probable cause is defined as "knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected," as "judged with reference to the time the defendant took the action initiating the criminal charges." *Andrews v. Ring*, 266 Va. 311, 322 (2003) (citation omitted). Importantly, when the facts relating to probable cause are in dispute, there is a question of fact for the jury. *Lee v. Southland Corp.*, 219 Va. 23, 27 (1978).

Here, on a motion to dismiss, the question presented is whether plaintiffs have alleged facts that plausibly support a conclusion that Costco was not reasonable in believing that plaintiffs were guilty of the suspected crime. A review of the amended complaint discloses that plaintiffs have done so. Thus, the amended complaint alleges the following facts:

---

[5] As plaintiffs correctly note, the definition of "malice" for purposes of a malicious prosecution action is distinct from the definition of "actual malice" in the context of punitive damages, which requires a showing that a "defendant acted ... in a manner showing reckless and wanton disregard of plaintiff's rights." *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 686 (1967).

8

(i) that a Costco employee directed Mr. Eshow to purchase a second set of flooring and to return that set immediately after the purchase, using the sales receipt for the first set of flooring in order to take advantage of the sale price,

(ii) that Mr. Eshow followed these instructions, and

(iii) that after Mr. Eshow completed the purchase of the second set of flooring and then returned that flooring set, Costco suspected that plaintiffs had committed a crime only on the basis of its records and security video footage, which recorded the actions Mr. Eshow took at the instruction of a Costco employee.

On the basis of these factual allegations, a fact finder could plausibly infer that Costco lacked probable cause because Costco's only basis for suspecting plaintiffs of committing a crime were the actions Mr. Eshow took at the instruction of Costco's employee.[6] And after finding a lack of probable cause, a fact finder could plausibly infer malice. *Reilly*, 273 Va. at 733.

With respect to the second element—that the prosecution was instituted by or with the cooperation of the defendant—one court has correctly noted that no "single, specific rule exists in Virginia for how a court determines whether a criminal proceeding was 'instituted by, or with the cooperation of' a defendant." *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp.2d 494, 510 (E.D. Va. 2010). Importantly, however, it is clear that under Virginia law, "a defendant instigates or cooperates in the proceedings by ... taking the original steps to initiate the proceeding (here the arrest)." *Id.* In this respect, the Supreme Court of Virginia has held that a defendant "unmistakably authorize[s]" a prosecution against a plaintiff when that defendant

---

[6] Costco contends that plaintiffs cannot establish a lack of probable cause because the amended complaint omits certain material facts. Specifically, Costco contends that the amended complaint omits the fact that plaintiffs' October 17, 2012 purchase of the flooring at the sale price was made using someone else's Costco membership and credit card. Costco contends that this obscured what had actually occurred and generated probable cause that plaintiffs had committed fraud. Importantly, however, it is well established that it is inappropriate on a motion to dismiss to look beyond the face of the complaint. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-64 (2007). To credit Costco's argument would violate this rule. The question here is whether the facts alleged in the amended complaint plausibly support a conclusion that Costco did not have probable cause, and as already stated, that question must be answered in the affirmative.

"provid[es] [the officer] with all the information used to obtain the issuance of a criminal warrant." *O'Connor*, 281 Va. at 9. Moreover, the Fourth Circuit has explained that under Virginia law, "[a] person who places before a prosecuting officer information upon which criminal proceedings are begun, and who later acquires additional information casting doubt upon the accused's guilt," has "an obligation to disclose his discovery to the prosecutor." *Clarke v. Montgomery Ward & Co.*, 298 F.2d 346, 348 (4th Cir. 1962). In this respect, it is "no defense that the accuser acted in good faith in initiating the prosecution, if he remains silent and allows it to go on when he later learns that he was in error." *Id.*

Here, plaintiffs allege facts that plausibly support a conclusion that defendant instigated the proceedings against plaintiffs and exercised some level of control over the decision to have plaintiffs arrested. Indeed, the arrest warrants against plaintiffs were based entirely on Costco's allegations of fraud, and the warrants never would have issued but for Costco's decision to report to Officer Rodriguez that Costco believed that plaintiffs had committed fraud.

The result reached here comports with other district court decisions in this circuit,[7] and as plaintiffs correctly note, the cases Costco cites in support of its contention that Costco did not exercise some level of control over the decision to have plaintiffs arrested are inapposite here because those cases involved defendants who, as witnesses to an actual crime, merely mistakenly identified perpetrators of the actual crime, whereas here, Costco mistakenly instigated criminal

---

[7] *See e.g.*, *Rodarte v. Wal-Mart Assocs., Inc.*, No. 6:12-cv-55, 2013 WL 1898999, at *2 (W.D. Va. May 6, 2013) (denying motion to dismiss a malicious prosecution claim where a defendant "falsely reported" to the local sheriff that a plaintiff had committed embezzlement, causing the plaintiff to be arrested and charged); *Bennett*, 744 F. Supp.2d at 529 (denying a defendant's motion for entry of judgment as a matter of law where the defendant had caused the plaintiff to be erroneously arrested for a crime by providing incomplete information when he reported the crime to the police).

proceedings against plaintiffs where no actual crime had been committed.[8] Thus, plaintiffs' amended complaint alleges facts that plausibly support the conclusion that the prosecution "was instituted by or with the cooperation of" Costco. *O'Connor*, 281 Va. at 7.

In sum, plaintiffs have alleged facts that plausibly support each element of a malicious prosecution claim against Costco, and accordingly, Costco's motion to dismiss must be denied with respect to this claim.

**B.**

Costco next contends that plaintiffs have failed to allege facts that plausibly support a negligence claim against Costco because the amended complaint fails to allege a cognizable legal duty that Costco owed to plaintiffs.

The Supreme Court of Virginia has made clear that "a plaintiff who seeks to establish an actionable negligence claim must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132 (2000). Importantly, a duty arises only when a relationship exists between the parties either by law or by contract. *Davis v. Commonwealth*, 230 Va. 201, 205 (1985).

Here, plaintiffs contend that Costco owed a duty to plaintiffs in two respects: (i) that when Costco reported the supposed crime, Costco had a duty to present to Officer Rodriguez *all* relevant facts, including exculpatory facts, and (ii) that once Costco realized that no crime had

---

[8] *See King v. Martin*, 150 Va. 122, 127 (1928) (holding that a defendant did not exercise sufficient control over the arrest when the defendant merely "appear[ed] as a witness when summoned" and incorrectly identified the perpetrator); *see also Brice v. Nkaru*, 220 F.3d 233, 238 (4th Cir. 2000) (holding that a defendant did not "institute or procure any criminal prosecution" when the "police independently investigated the case" and the defendant "simply reported the occurrence of [an actual] crime ... and responded to police requests that he verify a suspect's identification"); *Marsh v. Commercial and Sav. Bank of Winchester*, 265 F. Supp. 614, 618 (W.D. Va. 1967) (holding that defendants who merely identified the plaintiff as a suspect in a criminal prosecution did not institute the criminal proceedings against plaintiff and that the defendants had done "nothing but cooperate in the [police] investigation.").

occurred and that the information earlier provided to Officer Rodriguez was erroneous, Costco had a duty to take steps to correct that error. Yet, as Costco correctly contends, no such duty exists under Virginia law independent of a malicious prosecution claim. The Supreme Court of Virginia has not explicitly addressed the issue,[9] but in *Ekizian v. Microstrategy, Inc.*, 71 Va. Cir. 425, 2005 WL 2249592 (Cir. Ct. Fairfax Cnty. Aug. 23, 2005), a Virginia trial court expressly rejected plaintiffs' negligence theory. Specifically, the plaintiff in *Ekizian* claimed that his employer was negligent in reporting that the plaintiff had committed a crime insofar as the employer had a duty to present "to the officer the relevant facts, including exculpatory facts, known." *Id.* at *3. The trial court in *Ekizian* held that although the employer may have owed such a duty *to the police*, the employer did not owe a duty to the plaintiff, and therefore the plaintiff had failed to state a cognizable negligence claim under Virginia law. *Id.* Similarly, here, although Costco may have owed a duty to Officer Rodriguez to disclose all relevant facts, Costco did not owe such a duty *to plaintiffs*. Thus, without a legal duty, plaintiffs' negligence claim against Costco must be dismissed. To conclude otherwise—to recognize plaintiffs' theory of negligence—would be tantamount to allowing plaintiffs to circumvent the "stringent" requirements for maintaining a malicious prosecution claim by simply establishing *negligent* prosecution, a result inconsistent with the policy articulated by the Supreme Court of Virginia in *Reilly* that the "stringent" requirements of a malicious prosecution action "are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions." *Reilly*, 273 Va. at 733.

---

[9] In this regard, it is worth noting that the Supreme Court of Virginia recently noted in the context of a malicious prosecution claim that "[i]t may be—but we need not establish for purposes of Virginia law—that the 'person who places before a prosecuting officer information upon which criminal proceedings are begun' has 'an obligation to disclose' the discovery of 'additional information casting doubt upon the accused's guilt.' " *Egan*, 290 Va. at 774 (quoting *Clarke*, 298 F.2d at 348).

In sum, Costco's motion to dismiss must be denied with respect to plaintiffs' malicious prosecution claim, but granted with respect to plaintiffs' negligence claim.

### III.

Plaintiffs also assert the following claims against defendant Officer Rodriguez:

(i) Unconstitutional arrest of Mr. Eshow and Ms. Safar in violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983;

(ii) malicious prosecution with respect to Mr. Eshow and Ms. Safar; and

(iii) gross negligence with respect to the arrest of Ms. Safar.

Officer Rodriguez has moved to dismiss each of these claims on various grounds. After Officer Rodriguez filed her motion to dismiss, and after the parties had fully briefed the matter, plaintiffs filed a motion to amend the amended complaint in the case against Officer Rodriguez and Prosecutor Tingle, seeking only to add the following cause of action against Officer Rodriguez: "Unconstitutional Procurement of Warrants on Both Plaintiffs" in violation of the Fourth Amendment. Notably, plaintiffs do not allege any additional facts in support of this proposed cause of action. Each of the claims against Officer Rodriguez—the three claims alleged in the amended complaint and the cause of action proposed in plaintiffs' motion to amend—is addressed separately below.

### A.

Officer Rodriguez first contends that plaintiffs' § 1983 claims against her must be dismissed for failure to state a claim because Officer Rodriguez had no constitutional duty to take steps to withdraw the warrants for plaintiffs' arrest after the arrest warrants had been issued by the magistrate judge.

Inasmuch as plaintiffs' § 1983 claims against Officer Rodriguez are premised on the Fourteenth Amendment's due process clause—whether procedural or substantive due process—the claims must be dismissed because as the Supreme Court has made clear, allegations of false arrest, false imprisonment, malicious prosecution and unlawful seizure are all governed not by the procedural and due process components of the Fourteenth Amendment, but by the Fourth Amendment (incorporated in the Fourteenth Amendment). *Graham v. O'Connor*, 490 U.S. 386, 388 (1989).[10] Moreover, contrary to the argument made by plaintiffs' counsel during oral argument, it makes no difference here that the unreasonable arrest claim against Officer Rodriguez is framed as an omission—failure to prevent an unreasonable arrest—rather than an affirmative act, as plaintiffs provide no sound legal basis or authority for limiting *Graham* to affirmative acts. Thus, under *Graham*, to the extent plaintiffs' § 1983 claims are premised on the due process components of the Fourteenth Amendment, these claims must be dismissed, as the Fourth Amendment is the only viable basis for plaintiffs' § 1983 claims against Officer Rodriguez.

Officer Rodriguez also seeks dismissal of plaintiffs' § 1983 claims against her on the ground that these claims fail to allege facts that plausibly support a claim for unconstitutional arrest or malicious prosecution. In this regard, the Fourth Circuit has explained that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). To state a malicious prosecution claim under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff

---

[10] *See also Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) (holding that a defendant does not have a substantive due process liberty interest in avoiding prosecution upon less than probable cause).

pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Importantly, once an arrest warrant has issued, "a prosecutor retains all discretion to seek an indictment" and "a police officer is not liable for a plaintiff's unlawful seizure of a person ... 'in the absence of evidence that [the officer] misled' " the prosecutor or "unduly pressured the prosecutor to seek the indictment." *Id.* at 647, 648 (quoting *Wray v. City of New York*, 490 F.3d at 189, 195 (2d Cir. 2007)).[11] No such undue pressure is alleged here.

Pertinent here is the Fourth Circuit's decision in *Taylor v. Waters*, 81 F.3d 429 (4th Cir. 1996). There, the Fourth Circuit held that there was no Fourth Amendment violation where a police investigator failed to take steps to terminate criminal proceedings when after the plaintiff was arrested on drug charges, plaintiff's roommate, an admitted drug dealer, told the police investigator that the plaintiff was not involved in the drug offenses. *Id.* at 433. The plaintiff in *Taylor* alleged that the police investigator violated the Fourth Amendment by not acting to have the charges dismissed after obtaining this exculpatory evidence. *Id.* at 434, 435. The Fourth Circuit disagreed, holding that the plaintiff's Fourth Amendment rights were satisfied when the magistrate judge found probable cause and issued the arrest warrant, and therefore the police investigator could not be held liable. *Id.* at 436.

Similarly, in *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996), the Fourth Circuit upheld a dismissal of § 1983 Fourth Amendment claims based on an allegation that an

---

[11] In this respect, district courts have concluded that an officer is not liable for failing to inform a prosecutor of exculpatory evidence discovered after an arrest warrant has issued. *See, e.g.*, *Burt v. Aleman*, No. 15-CV-4493, 2008 WL 1927371, at *6 (E.D. N.Y. April 30, 2008) (holding that an officer would not be liable under § 1983 for malicious prosecution " 'even if the information had completely exculpated [a] plaintiff' " where there was no evidence that the officer insisted upon further prosecution of the plaintiff after his arrest) (quoting *Dirienzo v. United States*, 690 F. Supp. 1149, 1158 (D. Conn. 1988)).

arresting officer did not take steps to have criminal proceedings terminated after learning that the plaintiff had not committed the charged offenses. In the Fourth Circuit's view, the officer's failure to take steps to have the criminal charges dismissed after a magistrate had found probable cause did not render plaintiff's pre-trial seizure unreasonable under the Fourth Amendment. *Id.* at 184-85.

Here, plaintiffs' amended complaint does not alleges that Officer Rodriguez misled a prosecutor or that she urged a prosecutor to seek indictments against plaintiffs. Rather, the amended complaint merely allege that after the arrest warrants had issued, Officer Rodriguez learned from Costco that the charges were erroneous, but then failed to take any action to terminate the criminal proceedings against plaintiffs or take any steps to withdraw the facially valid arrest warrants.[12] These factual allegations do not plausibly support a § 1983 Fourth Amendment claim against Officer Rodriguez because as the Fourth Circuit made clear in *Taylor* and in *Brooks*, Officer Rodriguez's failure to request that the arrest warrants be withdrawn did not violate the Fourth Amendment.

Moreover, even assuming, *arguendo*, that plaintiffs' amended complaint states a valid Fourth Amendment claim against Officer Rodriguez, that claim is barred by the doctrine of qualified immunity, which protects government officials from a suit for damages when their conduct does not violate a "clearly established" constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Fourth Circuit has explained, "to escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Evans*, 703 F.3d at 646 (citing *Pearson v.*

---

[12] It is worth noting that according to an opinion of the Virginia Attorney General, a Virginia police officer does not "ha[ve] the authority to unilaterally withdraw or dismiss a lawfully issued arrest warrant." 2003 Op. Atty. Gen. No. 03-25.

*Callahan*, 555 U.S. 223, 231 (2009)). Plaintiffs have cited no controlling cases—nor have any been found—that support the proposition that Officer Rodriguez had a clearly established duty to take steps to terminate the arrest warrants once she had learned that the evidentiary basis for both arrest warrants was erroneous.

Thus, in sum, all of plaintiffs' § 1983 claims against Officer Rodriguez must be dismissed because the amended complaint fails to state a cognizable § 1983 claim against Officer Rodriguez, and even if the amended complaint did state such a claim, that claim would be barred by the doctrine of qualified immunity.

### B.

Plaintiffs' state law tort claims against Officer Rodriguez must also be dismissed for failure to state a claim. With respect to plaintiffs' malicious prosecution claim against Officer Rodriguez, Virginia law requires a plaintiff to allege facts that plausibly support the conclusion that at the time the defendant took the action initiating criminal charges, the defendant did not have probable cause to believe that a crime was committed. *Stanley v. Webber*, 260 Va. 90, 96 (2000). Here, plaintiffs have not alleged any factual basis for concluding that Officer Rodriguez knowingly presented false evidence or testimony to the magistrate who determined that there was probable cause to issue arrest warrants with respect to both plaintiffs. Rather, Officer Rodriguez's affidavit was simply premised on what she had learned from Costco regarding the purported crime. Thus, the amended complaint does not allege facts that plausibly support a conclusion that Officer Rodriguez lacked probable cause when she filed an affidavit in support of the arrest warrants. Accordingly, plaintiffs' malicious prosecution claim against Officer Rodriguez must be dismissed.

Plaintiffs' gross negligence claim with respect to the arrest of Ms. Safar must also be dismissed because Officer Rodriguez did not owe Ms. Safar a duty to withdraw the warrant for her arrest. This is so because Virginia does not recognize a cause of action for the negligent investigation or incorrect initiation of criminal process. *Boyce v. Bennett*, No. 2:14cv249, 2015 WL 6873547, at *8 (E.D. Va. Nov. 9, 2015) (dismissing a plaintiff's claim that a police officer was "grossly negligent" in an investigation because under Virginia law, there was "no viable state-law 'gross negligence' cause of action *against a city police officer* for negligent investigation and/or negligent production of investigative materials") (emphasis in original).[13]

## C.

After Officer Rodriguez filed her motion to dismiss, plaintiffs filed a motion to amend the amended complaint against Officer Rodriguez and Prosecutor Tingle, seeking only to add the following cause of action against Officer Rodriguez: "Unconstitutional Procurement of Warrants on Both Plaintiffs" in violation of the Fourth Amendment; plaintiffs do not seek to add any factual allegations to the existing complaint. In support of plaintiffs' proposed cause of action, plaintiffs rely on *United States v. Leon*, 468 U.S. 897 (1984), which reaffirmed the doctrine of *Franks v. Delaware*, 438 U.S. 154 (1978), that a warrant must be voided "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923. A reckless disregard for the truth exists where the affiant "in fact entertained serious doubts as to the truth of his" allegations or there are "obvious reasons to doubt the veracity" of

---

[13] *See also Durham v. Horner*, 759 F. Supp.2d 810, 815 (W.D. Va. 2010) (holding that there is no gross negligence "cause of action against police officers for conducting investigations"); *Lewis v. McDorman*, 820 F. Supp. 1001, 1008 (W.D. Va. 1992), *aff'd* 28 F.3d 1210 (4th Cir. 1994) (holding that "Virginia simply has never recognized a cause of action based on negligent investigations or prosecution").

his allegations. *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1985). As plaintiffs correctly point out, the Tenth Circuit has noted that "[t]he *Franks* rule applies to omissions as well as affirmative misstatements, if the omissions are so probative they would vitiate probable cause" and "[r]ecklessness may be inferred from omission of facts which are clearly critical to a finding of probable cause." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (internal quotation marks and citations omitted).

On this basis, plaintiffs contend that Officer Rodriguez recklessly disregarded the truth by omitting from her sworn affidavit the fact that Officer Rodriguez viewed a video showing Mr. Eshow's activities in Costco and disregarded the portion of the video depicting Mr. Eshow's purchase of the flooring in question. Contrary to plaintiffs' contention, however, the mere fact that Officer Rodriguez ignored the portion of the video that contained footage of Mr. Eshow's flooring purchase in no way supports an inference that Officer Rodriguez recklessly disregarded the truth because that portion of the video was not an "obvious" basis "to doubt the veracity" of Costco's allegations that plaintiffs had committed a crime, as evidence of a purchase is not inconsistent with the allegation that plaintiffs committed fraud against Costco by immediately returning the purchased flooring using a different receipt. *St. Amant*, 390 U.S. at 732. Accordingly, plaintiffs' motion to amend the amended complaint must be denied as futile because the proposed cause of action—without any additional factual allegations—is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

In sum, all of plaintiffs' claims against Officer Rodriguez must be dismissed because the amended complaint fails to state a claim upon which relief can be granted, and plaintiffs' motion to amend the amended complaint must be denied as futile.

## IV.

Plaintiffs also assert the following claims against defendant Prosecutor Tingle:

(i) Unconstitutional arrest of Ms. Safar in violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; and

(ii) gross negligence with respect to the arrest of Ms. Safar.[14]

Prosecutor Tingle has moved to dismiss each of these claims contending that: (i) she is entitled to absolute prosecutorial immunity with respect to all claims, and (ii) even if she is not entitled to absolute prosecutorial immunity, plaintiffs have failed to state a claim with respect to the § 1983 claim, and in any event, (iii) the doctrine of qualified immunity insulates Prosecutor Tingle with respect to this claim.

The doctrine of absolute prosecutorial immunity is well-established; it stems from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from [her] public duties, and the possibility that [s]he would shade h[er] decisions instead of exercising the independence of judgment required by [her] public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976).[15] As the Supreme Court in *Imbler* explained, the protection afforded by mere qualified immunity provides insufficient protection for prosecutors because they must often act quickly and with little information. *Id.* at 424-25. The boundaries of a prosecutor's absolute immunity are less clear. When the Supreme Court first addressed absolute prosecutorial immunity in *Imbler*, it "limited its holding of absolute immunity to the initiation

---

[14] Plaintiffs' amended complaint also alleges a malicious prosecution claim against Prosecutor Tingle, but plaintiffs have withdrawn this claim. Pl. Opp. to Def.'s Mot. to Dismiss, at 4.

[15] *See also* John C. Jeffries, Jr., *The Liability Rule for Constitutional Torts*, 99 Va. L. Rev. 207, 221 (2013) (arguing that the true justification for absolute prosecutorial immunity is not "that prosecutors are somehow so vulnerable to unwarranted civil liability that they require greater solicitude and protection than, for example, police," but "that much of what prosecutors do occurs in court, where they may legitimately rely on monitoring by opposing counsel and supervision by a judge").

and pursuing of a criminal prosecution" and "explicitly declined to decide the question of whether absolute immunity applies to those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Ehrlich v. Giuliani*, 910 F.2d 1220, 1222 (4th Cir. 1990) (citing *Imbler*, 424 U.S. at 430). In this regard, the Supreme Court in *Imbler* reserved the question whether absolute immunity insulates prosecutors when they engage in administrative or investigatory activities rather than prosecutorial activities. *See Imbler*, 424 U.S. at 430.

In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court had occasion to address the question left open by *Imbler* and made clear that a "functional approach" is appropriate to determine whether a prosecutor is entitled to absolute immunity. *Id.* at 486. Under the functional approach, the official seeking absolute immunity bears the burden of showing that the nature of her conduct is prosecutorial in nature, and therefore entitled to absolute immunity, rather than administrative or investigative in nature, and therefore entitled only to qualified immunity. *Id.* Applying the functional approach, the Supreme Court in *Burns* concluded that a prosecutor is entitled to absolute immunity with respect to her actions at a probable-cause hearing because "appearing at a probable-cause hearing is intimately associated with the judicial phase of the criminal process," and therefore is prosecutorial in nature. *Id.* at 492. The Supreme Court in *Burns* also ruled that a prosecutor is not entitled to absolute immunity for providing legal advice to police officers because this function is not sufficiently tied to the judicial process to warrant absolute immunity. *Id.* at 492-96. Although the Supreme Court's decision in *Burns* made clear that courts should apply the functional approach to determine if a prosecutor is entitled to absolute immunity, even after *Burns* many prosecutorial functions remained uncategorized.

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Supreme Court established an important principle for application of the absolute prosecutorial immunity functional analysis. There, the Supreme Court held that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested," and therefore a prosecutor is not entitled to absolute immunity prior to a probable cause determination. *Id.* at 274. As the Fourth Circuit has noted, the proposition "that officials do not enjoy absolute immunity for acts committed prior to a probable cause determination (i.e., during investigation) ... flows logically from the Supreme Court's declarations that the purpose of absolute immunity is to protect the exercise of discretion by key government officials." *Goldstein v. Motz*, 364 F.3d 205, 215 (4th Cir. 2004) (citations omitted). Absolute immunity's protection "extends to activities 'intimately associated with the judicial phase of the criminal process' ... because those activities, like judicial decisionmaking, involve the substantial exercise of discretion." *Id.* (quoting *Imbler*, 424 U.S. at 430). Indeed, "[o]nce a prosecutor possesses probable cause, he must decide whether to prosecute, which charges to initiate, what trial strategy to pursue, and a multitude of other important issues that require him to exercise discretion," whereas "in a pre-probable-cause investigation ... a prosecutor exercises no more discretion than a police officer and thus should enjoy no more protection than qualified immunity." *Id.*

Prosecutor Tingle contends that *Buckley* and *Goldstein* stand for the proposition that there is a temporal bright line such that (i) all of a prosecutor's pre-probable-cause activity is not insulated by absolute immunity, and (ii) all of a prosecutor's post-probable-cause activity is insulated by absolute immunity. Although the Supreme Court made clear in *Buckley* that the first half of this proposition is true, neither the Supreme Court nor the Fourth Circuit has ever held that *all* of a prosecutor's post-probable-cause activity is insulated by absolute immunity. To the

contrary, the Supreme Court in *Buckley* explained that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards" because "[e]ven after that determination … a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." 509 U.S. at 274 n.5. Indeed, if Prosecutor Tingle's proposed bright line rule were an accurate statement of the law, the functional analysis announced by the Supreme Court would be entirely unnecessary.

The Fourth Circuit has held that a prosecutor is entitled to absolute immunity for her decision to seek an arrest warrant against a charged party, *Ehrlich*, 910 F.2d at 1222-23, but neither the Supreme Court nor the Fourth Circuit has addressed whether a prosecutor is entitled to absolute immunity where, as here, a prosecutor does not take steps to *withdraw* an arrest warrant after learning that the arrest warrant should never have been issued because it was premised on wholly erroneous information. It is a close question whether this failure to act is investigative or administrative in nature—rather than prosecutorial in nature—and thus entitled only to qualified immunity. As the Fourth Circuit in *Ehrlich* explained, "in close cases courts drawing the line and deciding whether absolute immunity applies generally look to the following factors":

> (i) "the centrality of the challenged conduct to the criminal justice system";
>
> (ii) "the substantiality of the threat of vexatious litigation, and the extent to which that threat would inhibit performance of important public duties"; and
>
> (iii) "the availability of alternative mechanisms to safeguard against prosecutorial misconduct."

*Id.* at 1223.

Here, although the third factor—the availability of alternative mechanisms to safeguard against prosecutorial misconduct—does not support a conclusion that Prosecutor Tingle is

entitled to absolute immunity, as it appears no other mechanisms exist to prevent a prosecutor's failure to take steps to withdraw an arrest warrant she knows to be premised on erroneous information, the first two factors point persuasively to the conclusion that Prosecutor Tingle's decision not to take steps to withdraw the warrant for Ms. Safar's arrest after learning that the arrest warrant was wholly premised on erroneous information was prosecutorial in nature, and therefore entitled to absolute immunity.

With respect to the first factor—the centrality of the challenged conduct to the criminal justice system—it is undisputed that when a prosecutor exercises discretion in deciding who to charge and whether to swear out arrest warrants, these actions are prosecutorial in nature because they are critical to the prosecutor's role as an advocate in the criminal justice system and involve substantial discretion. *See Ehrlich*, 910 F.2d at 1222-23. By extension, a prosecutor's decision whether to withdraw an arrest warrant is also part of the prosecutor's role as an advocate within the criminal justice system and also involves substantial discretion. In this regard, the Virginia procedures for withdrawing an arrest warrant confirm that a prosecutor's decision to seek to withdraw an arrest warrant—or a decision not to do so—is prosecutorial in nature. Specifically, the Virginia procedures make clear that a prosecutor does not have the authority to withdraw an arrest warrant, but must instead file a motion to dismiss the arrest warrant with the appropriate court.[16] Filing and arguing motions is the grist of the litigation mill, and therefore the decision whether to file a motion to withdraw an arrest warrant falls squarely within a prosecutor's function as an advocate in the criminal justice system. Put another way, the decision whether to

---

[16] A prosecutor "may move the court in which the warrant summons would be returnable for the dismissal and/or destruction of any executed warrant or summons issued by a magistrate." Office of the Exec. Sec'y of the Va. S. Ct., Dep't of Judicial Servs., *Gen'l Dist. Ct. Manual, Crim. Procedures*, (Rev. 7/15), at 3-2 (available online at *<http://www.courts.state.va.us/courts/gd/ resources/manuals/gdman/chapter03.pdf>*).

file a motion to withdraw an arrest warrant is "intimately associated with the judicial phase of the criminal process." *Burns*, 500 U.S. at 492.

The second factor—the substantiality of the threat of vexatious litigation and the extent to which the threat of litigation would inhibit prosecutorial duties—also supports the conclusion that Prosecutor Tingle is entitled to qualified immunity. Here, as Prosecutor Tingle correctly points out, a conclusion that absolute immunity does not insulate prosecutors for the decision not to take steps to have an arrest warrant withdrawn would lead to the anomalous result that criminal defendants could mount collateral attacks against prosecutors for the unconstitutional *maintenance* of arrest warrants by way of civil litigation, even though these same defendants cannot sue prosecutors for their decision to *seek* arrest warrants in the first place. This would open the floodgates of litigation to a bevy of lawsuits. It is important to note, in this respect, that the application of absolute prosecutorial immunity in a given case is determined by evaluating the relevant function across a number of cases, not just the case at hand. In other words, although the facts of the present case may seem sufficiently outrageous to warrant prosecutorial liability, the more salient point is that in general, prosecutors ought not to be subject to civil litigation for the maintenance of arrest warrants. If prosecutors lived under the shadow of possible civil liability for improperly maintaining arrest warrants about which they had some doubt, the important role that prosecutors play in the criminal justice system would be inhibited. Thus, in light of the factors articulated in *Ehrlich*, Prosecutor Tingle is entitled to absolute prosecutorial immunity.

In opposition to the conclusion reached here, plaintiffs cite *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008). There, two witnesses in two criminal cases were jailed as material witnesses based on motions by two different prosecutors. *Id.* at 205-06. In the first case, the Judge

explicitly instructed the prosecutor to inform him of any delays. *Id.* at 205. Thereafter, the first case was continued for nearly three months and the second case was dismissed, but both prosecutors failed to inform the judges in either case of these developments, leaving the witnesses incarcerated. *Id.* at 205-06. In these circumstances, the Third Circuit declined to apply absolute prosecutorial immunity. With respect to the first prosecutor, the Third Circuit noted that once the case was continued, the prosecutorial act "occurred during a prolonged and clearly delimited period of judicial inactivity" and more importantly, the prosecutor "disobeyed the explicit instructions of the court when she failed to notify [the] Judge ... that the proceedings ... had been delayed ... ." *Id.* at 212-13. With respect to the second prosecutor, the Third Circuit noted that because the second case was dismissed, it presented a "relatively clear example of a situation in which the prosecutor's role as an advocate for the state had concluded." *Id.* at 215.

Contrary to plaintiffs' contention, *Odd* is neither binding nor persuasive here. To begin with, unlike in *Odd*, Prosecutor Tingle's pre-charge decision not to withdraw Ms. Safar's arrest warrant did not occur during a "prolonged and clearly delimited period of judicial inactivity." *Id.* at 212. More importantly, the first prosecutor's actions in *Odd* were not subject to prosecutorial discretion because there were "explicit instructions of the court" that removed any judgment on the part of the prosecutor, whereas here, no such Order issued, and therefore, in the absence of a judicial directive, Prosecutor Tingle exercised discretion in her prosecutorial role. *Id.* at 213. Moreover, Prosecutor Tingle's actions are distinguishable from those of the second prosecutor in *Odd* because that prosecutor's role as an "advocate for the state had concluded," whereas here, with respect to Ms. Safar's arrest warrant, the advocative role for a prosecutor in the criminal justice system had only just begun, and perhaps more importantly, Prosecutor Tingle was not the prosecutor assigned to Ms. Safar's case. *Id.* at 215. Thus, *Odd* does not compel a contrary

conclusion here, and therefore Prosecutor Tingle is entitled to absolute prosecutorial immunity with respect to all of plaintiffs' claims against her. Accordingly, all of these claims must be dismissed.

Given the result required by the absolute immunity doctrine in this context, it is unnecessary to address Prosecutor Tingle's other arguments, including her qualified immunity argument. It is, nonetheless, worth pointing out that even if Prosecutor Tingle were not insulated by absolute prosecutorial immunity, she would be entitled to qualified immunity, as plaintiffs have not—and cannot—point to "clearly established" law that stands for the proposition that a prosecutor must take steps to withdraw an arrest warrant once a prosecutor learns that the arrest warrant is premised on erroneous information. *Harlow*, 457 U.S. at 818 (holding that the doctrine of qualified immunity protects government officials from a suit for damages when their conduct does not violate a "clearly established" constitutional right). This is a flaw in the qualified immunity doctrine; because cases resolved on the basis of qualified immunity—or, as here, on the basis of absolute immunity—are often resolved without reaching the merits, no clearly established constitutional right is available to be invoked by a future plaintiff.[17] Even when courts do reach the merits, any conclusion is likely to rise no higher than dictum, and therefore not reach the level required for clearly established law. And this is so even where, as here, most people would quickly agree that the state actor's action or failure to act is wrong and should not have occurred. This impediment exists in all qualified immunity cases, but it is especially pronounced in cases involving prosecutors who are afforded not only the protection of the partial shield of qualified immunity, but also the impenetrable fortress of absolute immunity.

---

[17] *See Pearson*, 555 U.S. at 236 (holding that in resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by a plaintiff constitute a violation of a constitutional right).

A final comment merits mention. There is no doubt that the alleged facts led to egregious results, particularly with respect to Ms. Safar, who was unnecessarily incarcerated for three days over Christmas.[18] Indeed, the sad irony of Ms. Safar's harm is that she was deprived of liberty while taking steps to perfect her application to become an American citizen with the constitutional right to liberty. This result could have been avoided had Prosecutor Tingle taken action to have the warrant for Ms. Safar's arrest withdrawn after Prosecutor Tingle became aware at the hearing for Mr. Eshow that the arrest warrant for Ms. Safar was based on misinformation and not probable cause. Justice Powell, writing for the majority in *Imbler*, recognized that absolute immunity could result, as here, in an unredressed injury. He noted that although absolute immunity "leave[s] the genuinely wronged [individual] without civil redress against a prosecutor whose malicious or dishonest action deprives [her] of liberty[,] ... the alternative of qualifying a prosecutor's immunity would disserve the broader public interest" by "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper function of the criminal justice system." 424 U.S. at 427. But there should be no mistake here: the legal conclusion reached is not intended to excuse Arlington County from failin to take action it should have taken to avoid the unjust arrests, including a more diligent investigation and requesting to withdraw meritless arrest warrants. Notwithstanding the application of absolute immunity, most fair-minded people would conclude that it would be appropriate—indeed, even necessary—for Arlington County to extend to plaintiffs a formal and sincere apology for what occurred, and perhaps that legislative relief in the form of a special bill would be appropriate here. *See El-Masri v. Tenet*, 437 F. Supp.2d 530, 541 (E.D. Va. 2006)

---

[18] Not addressed in this case is whether Prince George's County should have acted with greater alacrity in producing a judge for Ms. Safar's case.

(noting that a legislative remedy may be appropriate where a judicial remedy was not available to redress an unlawful and mistaken rendition).

V.

Accordingly, for the reasons stated here, all of plaintiffs' claims must be dismissed except for plaintiffs' malicious prosecution claim against Costco.

An appropriate Order will issue.


Alexandria, Virginia
April 4, 2016




/s/
_____
T. S. Ellis, III
United States District Judge